Ruerin, Chief-Justice
 

 This case arises under the act of 1798, c. 492, and depends upon its sound construction. It recites that the mode of selling lands for taxes as then established by law, was. insufficient to secure the collection of the revenue; and then provides amongst other things, that, when no person will pay the taxes for a less quantity than the whole tract, it shall be deemed a purchase of the whole by the Governor, and the Sheriff shall execute a conveyance to him, and his successors, for the use of the State.; that it shall, be the duty of the Sheriff to perfect the deed, by signing, acknowledging and delivery thereof in the presence of the next County Cenrt; .that the Clerk shall register it in a book, to be kept for that purpose, and after doing so shall certify the same, and deliver it to the Sheriff, (who shall call on him for the same,) within twenty days after the Court; that the Sheriff shall,before he settles his account with the Comptroller, deposit the deed with the Secretary of State, who shall record and keep it for the benefit of the State, and that the lands so conveyed shall be deemed vacant and subject again to entry. It then further provides, that the Secretary of State shall give to the Sheriff a certificate setting forth the quantity .of land thus conveyed,.(the tax being then
 
 ad numernm
 
 not
 
 advalore
 
 in,) and that upon the deposit thereof with the Comptroller, and the oath of the Sheriff, that he had conveyed in conformity to the requisitions of the act, all the lands by him sold for taxes, and thus purchased for the use of the State, the Comptroller (the requisites of the act being complied with,) shall allow the Sheriff in his settlement, a credit for the tax on those lands and. all charges on the sale, and his commissions thereon, as if the sum had been collected in money ; and lastly that the Sheriff shall be credited in like manner in his settlement at home, for the county and poor taxes.
 

 
 *552
 
 Generally the execution of por-fóy^ge^of official duties, must t^the^terms^prX scribed.
 

 Such are the enactments of the Statute. On the part of the appellant, it is contended that the Sheriff’s authority to sell lands for taxes, is a naked authority and that the validity of ail acts done by him, and of the title derived under him, depends upon the strict and literal observance of ail the provisions of this and other laws prescribing his duties, either as preparatory to a sale, or in completion of it by a conveyance; and particularly, that since this statute defines the timo and mode of conveyance, one made in a different manner,and ata different time, is void. On the other hand, the' counsel for the plaintiff insists that tlm.se provisions are merely directory to the officers, and although each officer may he liable for the omission of his own duty, at the suit of the party grieved, to the extent of the damage sustained, yet that the validity of the acts of one officer, cannot be impeached upon the default of another, nor the default of all affect the title of the land, whether purchased by the State,or an individual. Of this latter opinion, was his Honor, upon the trial, in reference to*most of theprovisions of the act, and particularly in reference to tiioso which relate to the defects alleged to exist in the deed made by the Sheriff in this case. They are two: The one, that tiie deed was not signed, acknowledged and delivered in open court, but only acknowledged there. The other, that such ac-knowledgement was not at the next court after tiie sale.
 

 We have considered the act attentively in its details, and in connection with the other statutes upon the same subject. We have also weighed the' principles upon which the construction of this and similar statutes, insisted on by each side, are founded. In our opinion, each principiéis correct to a certain extent, but in their application, neither is true, as an universal proposition.
 

 It is true, that tiie Sheriff fias but a power, and no estate, in the land, it is also generally true, that he who has only such a power, and must conform in itsexecution to tiie terms pr< scribed. The grant of tiie power was at the will of the grantor; and the formalities with which its faithful execution are to be guarded, are equally arbitrary. They must therefore he strictly observed. There is
 
 *553
 
 ns little doubt tliat the will of the Legislature touching the mode of the performance of official duties or of the transfer of estates, is equally obligatory. But there may be and is a difference in the means of ascertaining that will— While exact conformity is required-to the provisions of instruments conferring a power between individuals, be- ’ cause the court can see no ground out of it, for any latitude of discretion, and because the instrument itself could be, and was necessarily looked to by one dealing for the estate, and a-departure from its injunctions readily perceived ; there are yet many instances in which forms and ceremonies, prescribed by the Legislature, are judicially regarded merely as forms and ceremonies, «■•the omission of which shall not prejudice except in those ' cases which fall within the reason for‘prescribing them. An example is found in the law, requiring all bills of sales for slaves'to be registered; yet, ‘they are good between the parties without it, and are void only as to -‘Creditors and purchasers, -for whose benefit the enaet•ment was made. Nor-has the omission of them been allowed to-operate, when for the sake of executing a se-con(^a,‘y intention of the Legislature as to the manner of performing an act within their primary intention, the Pr*nc*Pal act would be defeated. As in sales under execution without due advertisement, -when the object is the the creditor with as little loss to the debt- or as possible ; which can only be attained by sustain-inS an honest purchase, at even an irregular sale— Hence such-sales have been supported; and also those of Jand> where-there were goods, although the Statute only authorises *the sale of land for the want of goods. It -cannot’be said that is the consequence of the form of the writ, and that to it only need the purchaser look. For although
 
 the fieri facias
 
 is as at common law, except that it runs on its face, against lands and tenements, as well as goods and chattels, yet the provisions of the statutes control its operation in particular cases to some and in ethers to all purposes, as if they were incorporated into the writ. Tims the writ does not specify the advertisement, order, place or mode of sale; yet the Sheriff
 
 *554
 
 is certainly liable to the action of the party for mis-fea-sanee or non-feasance in each particular. So, while the purchaser gets a good title, when-the default of the Sheriff consists in violating some of the directions, he will gain nothing, if it consist in , the violation of others. As if he buy from the Sheriff at private sale, which he could make at Common- Law, but cannot, under our present law.
 
 Ormond
 
 v.
 
 Faircloth, (Conf. Rep.
 
 550, 1
 
 Mur.
 
 36.) Also, if the Sheriff sell land or slaves at another place than the Court House, or after the last day of the week, on which by law, he ought to-sell, a. purchase is void.
 
 Den on demise, of Mordecai
 
 v.
 
 Speight (Ante
 
 3
 
 vol.
 
 428.) Or; if the purchaser by active means procure the Sheriff to sell without advertisement,- or to sell lands when there are chattels, betakes nothing,,.
 
 Jones
 
 v.
 
 Fulgom,
 
 (2
 
 Murph.
 
 364.)
 
 Doe on dem. of Lanier
 
 v.
 
 Stone,
 
 (1
 
 Hawks
 
 329.) Inthese cases, the authority of the writ is not deduced from, or- confined to,, its terms, but to those terms as controlled by the general regulations of the law. These regulations all are alike bound to take notice of. The Sheriff himself, when called on in any way, must be able to show his- compliance with them. Third persons need not shew affirmatively the observance on the part of the Sheriff, of all legal’ pre-requisites to the sale, nor are they charged- to take notice of all irregularities when shown on the opposite side, as in the advertisement, or adjournment of the sale, or that there were chattels which the Sheriff might have seized instead of the land. But whore the violation of law is known to the purchaser, and he haspro-cured it, or could not but know of it, as in the case of a private sale, he is no more protected in his purchase, than the Sheriff is in the sale. In these instances- the purchaser breaks the law himself, or abets its breach by the officer, to the apparent prejudice of the parties to the execution or to the danger of their interests, and ought not to be upheld by the law.
 

 
 *553
 
 í-But -tho exact form Vby°ftn o& cer is not roquir-to’his acts when it will defeat the TheLegislature^
 

 As in execu-jitt being tTen-hance the price,
 
 meat
 
 17Mddfs’ they are -not afr larity in^thepnor of the She-
 

 
 *554
 
 it* ethemis* must be known t0 is procured gjjf he^uy*^ private «ale.
 

 The first inference from the foregoing cases and reasoning is, that the provisions of a statute, which direct the performance of certain duties under certain circum
 
 *555
 
 stances, are to be token as merely directory, in favor of those who cannot generally know, whether the required circumstances exist or not,, and have a right to expect that the officer of the law has in all things observed the' law, and that lie is sufficiently responsible for the consequence of liisbrcach of duty. The next is, that as to the officer himself, and as to all those who procure the infraction of the law by him, or abet such infraction, when they must kno.w it to be such, and so know, because the contrary cannot be, those directory provisions are strict laws and admit of no modification or departure. All such regulations are intended to protect the weak and distressed, and are guards, against those in whose ¡lower they are; and cannot he dispensed with, except to avoid a greater mischief to the person whose protection is their object. But this can never apply in favor of those persons who are themselves tiic violators of the law, and yet seek to take benefit by the very act which is contrary to the law.
 

 In this State, saleiof laud for taxes are
 
 quad
 
 sales under process of execution, and are governed hy rules analogous to those regulating sales under
 
 ji. fas.
 

 The application of these rules are familiar to sales by execution. It lias been insisted by the counsel for the appellant, that they must be confined to them, and cannot he extended to sales for taxes. Cases from the Courts of the United States and some of the sister States, were cited, which seemed rather'to sustain the position. Doubtless that conclusion may properly follow from the framing of the particular statutes. The law may be so drawn up as to shew an intention in the Legislature, that eacli matter prescribed shall, under all circumstances, and as to all persons, .be of the essence of the sale, which is to be the final result of all those proceedings. But in this State such sales have
 
 not been
 
 regarded in the light of
 
 ex parte
 
 proceedings, inflicting a forfeiture, or to produce one consequentially of the nature of inquest (if office or outlawry, nor even as a naked private power, but as a method of raising, by a species of process, money due to the sovereign; and therefore, upon the same footing, as far as the like regulations were applicable, with the methods of levying debts at the suit of private persons. Thus in
 
 Den ex dem. Martin
 
 v.
 
 Lacy,
 
 (1
 
 Mur.
 
 
 *556
 
 311.) it was held, that the purchaser had a good title under a sale for taxes, although the Sheriff had not advertised for the time, or in the Gazettes prescribed. It may be mentioned here, that besides the general reasoning which induced the court to adopt that opinion, it finds some sanction in the phraseology of the act of 1792, which directs that lands sold for taxes should be advertised “as is required in cases of sales by executions,” as to which the law was settled, that the purchaser was not bound to prove due advertisement. The point was again made in this court, in
 
 Stanly
 
 v.
 
 Smith
 
 &
 
 Green
 
 , (1
 
 Law Repos.
 
 511,) and ruled as before.
 

 When the She-where his deed eiceededhispow^
 
 er,
 
 r.o title passe* t0 the Purchaser-
 

 But on the other hand, when the Sheriffhad noautho-rity, or the purchaser’s title deed shews that he has tran-sccuded his authority, and that therefore, it must have been known to the purchaser, the doctrine is settled that no title passes. Thus, in the same case of
 
 Den
 
 v.
 
 Lacy,
 
 it was admitted, that if no tax was due, or if it liad been paid, the sale would be void. In
 
 Jones
 
 v.
 
 Gibson,
 
 (N.
 
 C. T. R.
 
 41) a tract of land was sold for the taxes alleged to be due on the whole for three years, w hen the tax on an undivided third part had been paid. It was held for that reason that the sale was void, and also because the Sheriff cannot sell for a tax longer due than two years. In
 
 Den on Dem. Douglass v. Short, (ante 3 v. 432)
 
 it was again decided that a sale for the tax of two years, when only one was due, was ineffectual; because the whole tiling is not sold, entitling the former owner to the surplus of the proceeds, as on a
 
 fi.fa.
 
 but only the least part for which any person will pay the tax due.— It is impossible to say for what quantity half the sum of money would have been given, as only one person might have had the whole sum demanded, while many could have raised that due. The owner, if the sale stood, would certainly be deprived unjustly of a part of his land, and as the court could not say how much nor which part the abuse of authority took from him, it was necessarily held void for the whole.
 

 Applying the principles of these decisions to the pro-, visions of the revenue laws generally, and to that under
 
 *557
 
 consideration, in particular, we think the present qnestion may be decided on grounds entirely satisfactory.
 

 • The act of 1784,
 
 (ch.
 
 1
 
 Iredell's Rev. p.
 
 475,) for ascertaining what property shall be deemed taxable, the method of assessing it and
 
 collecting
 
 the taxes,provides, (s. 14) that if any owner of land shall be unwilling to pay the taxes, he may surrender the land to the State, and that it may then be taken up by others. In 1793,
 
 (new Rev. c.
 
 394) a method is pointed out for those who had attempted to make a surrender, to do it effectually; and as to all future cases,the act of ’84 is repealed. By the act of 1787, (c. 269) and of 1801,
 
 (c. 3 Martin's
 
 Rev. 170) the justices, taking the list of taxables, are required to return their lists to the County Courts immediately following the taking of them, and the clerks to transmit copies to the Comptroller on or before tho 1st of December following, and also the name of the Sheriff and his sureties; on which the Comptroller is to charge the Sheriff with each tax on his books and certify it to the Treasurer. The clerk is also to furnish the Sheriff with certified copies of the tax lists, on which, after the first day of the succeeding month, (now April) he is to proceed to collect, and is to account for and pay into the Treasury the whole amount of each
 
 species
 
 of tax on or before the 1st day of October ensuing; in default of which, the Sheriff shall forfeit his commissions, and the Treasurer shall immediately take judgment against him for the sum reported by the Comptroller,and also, by other acts, for certain penalties. Upon a settlement, if made, the Sheriff shall be allowed certain commissions, and, by other acts, his charges, and for insolvents under particular
 
 regulations.
 
 By the acts of 1792,-(c. 376) and 1800 (c. 547) the Sheriff has the further time of one year, from the day prescribed by law for settling his public accounts, to finish the collection of taxes, and may do so by distress; but it is expressly provided, that this privilege shall in no respect alter or interfere with the law, directing the time and manner of his accounting with and paying the
 
 *558
 
 Comptroller and Treasurer. These acts fix the time at which the Sheriff is chargeable,the sums to be debited to him, and the evidence on which the charge is made. By them he is bound to pay the gross revenue of his county on the first day of October, unless he discharges himself in some of the methods prescribed by law.
 

 One of those methods is that now under consideration. It is unjust that the Sheriff should pay the tax, (then on land, according to quantity) if he had attempted to sell, but could not sell the subject taxed for the sum assessed on it. Previous acts had authorised him to distrain and sell lands for the taxes. That of
 
 179Z
 
 makes land liable for all the taxes of the owner,& for want of personal property, directs a sale out and out, and the surplus money to be paid to the owner. That of 1794 provides, that so much of the land shall he sold as shall be necessary to pay the taxes and contingent charges ; but it does not say when or how that part shall be laid off, identified or conveyed. The act of 1796 directs advertisement in certain Gazettes and that the land shall be offered in tenth parts, until the sum be raised. This act .was still defective in not specifying the time and method of severance and of conveyance; and also in the important particular of not providing for the case, in which a sale
 
 could not bo
 
 made for want of bidders.— Then comes the act of 1798, which contains the enactments before quoted, and besides them, these others;— Tiiat the Sheriff should set up the whole tract of land, liable for taxes, by way of
 
 Dutch
 
 auction, and strike off so much to the person who offered to take the smallest lumber of acres for the sums to be raised. That the purchaser may choose his quantity out of any part of the land, to he laid out in one compact
 
 body,
 
 as nearly quare as may be, and adjoining some of the outer lines if the tract; and that he should within ninety days dc-iver to tiie Sheriff a plat made by the county surveyor rom actual survey, with the courses and distances men-ioned thereon; and the Sheriff is thereupon required to nake him a deed.
 

 The cases embraced in the act are therefore tw»:-r-
 
 *559
 
 a purchase by a private person; and one by the State, or by the Sheriff, for the State. The enquiry is, who* tiier the times at which the sales arc to be completed by conveyances, according to the letter of the act, are, in respect of the titles derived under such sales and conveyances, mere formal collateral incidents not material to the titles themselves, or are substantive component parts of the conveyances, and csential to their validity. We take it for granted, that the act of sale is not supposed by any body to vest the title till a conveyance.
 

 The. cases of
 
 Den
 
 v.
 
 Lacy
 
 (1
 
 Jtiurph,
 
 311) &
 
 Stanly
 
 v.
 
 Green
 
 0*~**«1>
 

 With regard to a sale to an individual, \vc think it qiiitc clear, upon principle and anthority, that the time .* ... rr,, f . . ,, is material. The purchaser is to procure the survey and plat and bring it to the Sheriff. These acts are his own, or he undertakes to. have' them performed.
 
 He
 
 must lose by his own negligence, and cannot say that a thing which tiie Legislature requires him to do, is unimportant in itself, and that it may be done at any period, as well as that which is prescribed. It will hardly be stated, after the cases of Stanly v.
 
 Smith
 
 &
 
 Green,
 
 and Doe v.
 
 Short,
 
 that if the Sheriff were to convey the whole tract to a purchaser, as having been bid off by him, that the deed would be good for any part; or if lie were to convey an undivided share, without any survey, or a parcel polygonal in form and not contiguous to any of the outer boundaries. Why would the deed be bad?— because there is an excess of power beyond that delegated, and this cannot but be known at the time to the person claiming benefit by the act. So with respect to the time of the survey; tiie same party is laid under that restriction, and he must observe and submit to it. Tliere is no instance in which the law allows a person who is to do a tiling, or to do it at a particular time, to have himself the benefit of it, when omitted, as if it were done, or done in due time. But certainly not in a case where the delay is a prejudice to another, and the effect of the act, when completed, is to defeat a former estate. If tiie purchaser be not field down to the time, he will have an indefinite period. In the meanwhile, the former owner cannot know which part is his, for no elec-
 
 *560
 
 (ion is given to him, in default of the purchaser's election. The object of the act was, to have as little sold as possible, and therefore it gives the selection of the quantity bought to the purchaser, and it was also an object to afford the former owner an early opportunity to know his own, and therefore the purchaser’s selection must be at a short day. Upon this act in itself, - therefore, the materiality of the time is apparent, in respect of a private purchase. ' -But if there could be a doubt on it, it is entirely removed by the act of 1809, (Rev. c. 760) which is in amendment of the former.. It recites, that by the act of 1798, purchasers are required,within ninety days, (which is enlarged by subsequent acts,) to present to the Sheriff a plat made by the county surveyor or his deputy, from actual survey, and that the surveyor is not obliged by law to make the survey within the time,
 
 by whose neglect or refusal ihe-honest purchaser may lose his
 
 ■land, although he has fairly-paid the State for the same;.' and enacts that the.surveyor shall survey upon request, under a. penalty, and upon his refusal, gives the.purchaser a further time of six months to procure a survey by any other person, on which the Sheriff shall convey,— Under this act of -1808, if-could not be denied that if the purchaser did Hot, within the enlarged time,' complete-his title, it would be gone entirely. The act recites upon its face, that the time is essential, and that the purchase may belostby the fault of the-surveyor, and not that of the party alone, and if it were open before the judicial construction to the .contrary, it is not now,after this legislative interpretation. Indeéd, the very enlargement of the time is conclusive upon the necessity of observing-strictly that-before prescribed, for why-do it by statute, if it were allowable by the courts? It cannot be said that the object was to make the restriction complete to the longer period allowed, for the act ties it down to that period, no more than the former act to the lesser term,, except in the inference to be deduced from the declaratory provision, that under the former act, no title passed, unless upon a survey within ninety days. After the act of 18.08, this sense put by the Legislature on the law
 
 *561
 
 of 1/98 must bo received by a court. We deem it clear therefore, that the purchaser must observe the time, as much as the former owner must, in his application for redemption.
 

 The same train of reasoning leads to the conclusion, that it is equally essential to the title of the State. The' prescription of certain periods in the same statute, within which those things are to be done which divests an estate, the things themselves being of the same nature would seem to render it certain, that if a fixed day be material in the one case, it is in the other.
 

 But it is said, there is a difference, as the State is in no default. All the acts are to be performed by officers, whose omissions, therefore) ought not to
 
 prejudice the
 
 State. That as a purchaser, her title ought to be supported, and unless it be, that the revenue due to her, as sovereign, u ill be lost upon a construction of the very •act, which declares its object to be, to secure its collection, for which end the previous laws were insufficient.
 

 íf the-State could be regarded as a purchascj'.the court could not sustain the purchase, if by the structure of her own laws she had made its validity to depend upon an act which has not been performed. That may well
 
 be,
 
 notwithstanding she is herself the purchaser. It is not to be presumed that she intends injustice to her citizens, and she may rather relinquish the present tax, than •exact future taxes on the same land, from the owner, and then defeat his title by taking a deed under a former sale. B'or the owner is liable in his personal estate and other lands, for the taxes on each tract, by other statutes, and until a conveyance, the title of the land sold remains in him, and he may be assessed for it. In the case of a sale to an individual, he is made liable it is true, to the accruing taxes, but this must mean after he has completed his title, because the provision for redemption is, that the former owner shall repay the sum paid on the purchase, with twenty-five per cent, thereon, without including intermediate taxes. But the act is silent about accruing taxes when the State buys, and so it must have been intended, because one tax is always
 
 *562
 
 assessed on land before it can be actually sold for tbe preceding assessment, and tbe public is. under no. obligation to give up either.
 

 But to us, it seems that the State cannot be deemed a purchaser, whose title is to be protected, notwithstanding irregularities, within any of the principles on which they are disregarded in sales on executions. The scope of the act is not to enable the State to re-acquire her territory from her own citizens. She does not wish it. As soon as she gets it under this act, it is by the same act offered for private appropriation again, upon the same terms on which it was before granted. The policy of the State, in ibis statute and. throughout our legislation, is to part on the most favorable terms with •all-her public-domain, with a few exceptions, and not to become again the proprietor of any that has been granted, unless in a case of necessity. This is clear from the act of 1793, which forbids the surrender of land to avoid the taxes. It is apparent on the act of 1798 itself, for she does not purchase, as a chapman does, for the least price, but only takes the land instead of tbe tax, when the tax can be got in no other way, and if she docs not take the title, the Sheriff is responsible for that tax, and the ovraer for the accruing ones. The great object of this provision, therefore, is not to ac* .quire the land for the State, but to secure the
 
 collection
 
 of tiie taxes, to raise revenue, and have it duly accounted •for and paid by the proper officers, and in justice to those officers, to make them account, for and pay only such portions as they have collected, or might have collected.
 

 As has been already mentioned, the Sheriff is charged with all the taxes upon tiie clerk’s return, and they are to be paid by him, whether collected or not, on the first of October in each year. If they have been received either from tiie person assessed, or by tiie sale of his property, .the Sheriff accounts only for what has come to his hands. Before the act of 17 98, there was no provision to meet •the case, where no sale could he made, nor for the case of a sale at a less price than the whole tax. These omis
 
 *563
 
 sion.s exposed the Treasury to the' danger of deficiency, and also of'fraud. The Sheriff might.make sales for-a small part of the tax,'op he might really be unable to collect it by a sale. In the latter case'hc ought to be-cxcused from paying. No act of the Assembly is found which authorised any relief to him, at the public offices, upon his return of that fac.t, or otherwise. But if ho did not-get it then, the Legislature itself would certainly extend it by á special act, for which - probably, there wei-e many applications. To avoid these inconvenien-tes to the public, find especially to give a certain.,and adequate relief to the Sheriff's upon an uniform rule? which would protect them from exactions at the Trcasu-. ry for monies, which they had not, and could not receive, And at the same time enforce them' both to diligence in collecting, and punctuality in paying the revenue, were the causes of the act of 17"98. .The case within the pur.view of the act, is a sale-arid conveyance completed be-' fore the tax for which the sale is made is due, and paid .at the Treasury. The office of Sheriff is annual, and his accounts and settlements for each year, distinct and independent.. Hence the settlement in.which he is-to have credit for the land sold, is that which includes that Very tax. The act assures to him such .credit, upon certain conditions which it puts in his power- to perform, ‘ and the performance of which it requires to be established by certain evidence. ' The case then -is not one.in which the interest of the creditor, or the- deblor requires the law to be indulgent in overlooking omissions -in the-mode of proceeding. It is one in.which the creditor is ■secure at all events, because she can look to the Sheriff and bis sureties for the tax, but in which she .will not, provided he makes it appear in the' manner prescribed, which is plain and easily attainable, that she ought not-. This part of the act, is therefore substantially and really for the benefit of th.e Sheriff himself,- the person charged with the. duty of selling, and with the performance of all the subsequent measures off importance required for its completion. Upon established principles he ought to be held to strict performance. He is so held in this
 
 *564
 
 statute. It requires him to produce and file the dced.inthe office 'of the Secretary of State before he settles for the taxes, and to m ake oath that he
 
 has conveyed
 
 all the.Iands struck tiff to the State,
 
 in conformity to the requisitions :of the. act.
 
 The deed must therefore have been mad.e, recorded and filed, before the -first-day of October of the year in which the tax is payable. This would'of itself, bo fatal tó the plaintiff’s title, since the sale was for the tax of 1813,due 1st October, 1814,-and was not made till the 19th of November following. But it is not adduced now with-'a view to that position,-but to those on which the decision was made in the Superior Court. If the sale must be before the day ofp'ayment, and one afterwards is void,. it necessarily..foliows that every other act,- essential to the use of'the sale and’deed upon that day of payment, must also precede it. That such, subsequent sale is void,is deduced from these premises. The act no where engages the State to refund the taxes already paid into the Treasury, if at a subsequent day, the land cannot be sold to. a private person, nor does it authorise the Treasurer or Comptroller to, allow a credit, except in the settlement for the tax when due. After receiving the tax from the Sheriff, 'it cannot be supposed that the State w'ould keep it, and also'take the land. She does mot agree "to purchase but-for a tax due her at the sale. For the benefit of the Sheriff she does that, but the act holds' out no. idea to him, that after he has accounted with.her, he may yet impose the. land on her, and reclaim the money. There is no powur in the officers of State,to allow such a-credit, or to make-the land a part of the public domain, but-in one'-event, which has not occurred here. It must.be taken liere that the State has received the lax, and therefore ought not to take the land. At the Treasury the Sheriff could not be reimbursed, unless by a special act, the validity of which arises not from the previous legal provision and obligations on the State, -.but upon the will of the Legislature, who can dispose of the revenue at pleasure. Nor is it to be supposed that such a • case would meet with Legislative favor, because it would encourage negligence and-delays ia
 
 *565
 
 collecting the taxes. But if it would, it has not been expressed in any public law.
 

 The question has thus far been considered in reference to the words of this part of the Statute, and to the circumstance that the interest of the Sheriff himself, was principally concerned, and therefore that he should act in due time. 'Whatever interest the State has, demands likewise his diligence throughout. It is important to her to know her actual nett revenue, and what prior claims there are against her at the time it is paid in.— She wishes to re-sell the land, that she has reluctantly taken back, and with as little delay as possible. An early and public notice of it in the county where it is situated, is therefore deemed important. She wishes to avoid and detect frauds attempted on her, and therefore "while the whole matter is of recent occurrence, she re■quires that a sale made,shall be acknowledged of record and in open court of that county, that no pretended sale ¡nay at a distant day be imposed on her, and she brought in conflict with one of her own citizens. Every act of ■omission which tends to defeat these views, is inconsistent with the real intention of the Legislature, and cannot be tolerated. The State does not take the land but as a credit to the Sheriff for the tax, and no conveyance to the State is to bo taken as valid within the Statute, but «uch an one, on the production of which, the Sheriff would be entitled to credit for the tax. From this it would result, that the Sheriff must procure the other officers to do their duty, because otherwise the State is not bound to accept the deed, and the title does not vest in her, under this law, in any other case. The injury ■to the Sheriff is not one which defeats an estate, but is merely pecuniary, for which his redress would be plain against the officer. But it is not necessary to decide •on the effect of the omissions of others. The case is not brought to that, but arises on the omission of the Sheriff himself, of an act exclusively in his own power, 'which the law makes essential to his own discharge, without which discharge, the State neither wishes, nor will take the land.
 

 
 *566
 
 It may be said that the State has accepted this deed by her officers, and by other officers, has re-granted the land, amongst others, to the lessor of the plaintiff, which shews that she claims the benefit as a purchaser. It is notorious that grants are always issued upon the suggestion of the grantee, that the land is vacant. The State does
 
 not warrant
 
 that, nor is it a fraud in her to grant land already appropriated On the contrary, it is declared to be a fraud in her to obtain a grant for such land; for which the entry laws declare the grant void, and for which it may be revoked and cancelled, upon
 
 scire facias,
 
 at her suit. Besides this, the sovereign is never estopped, because she must necessarily
 
 act through agents with instructions
 
 and authority prescribed by law', and therefore may always show the' truth.
 

 To this conclusion we have formed, no objection occurs to us as plausible, unless it be, that under the statutes mentioned, the Sheriff 1ms an additional year to make collections, and may do so by distress. The answer is,thatthet\vo statutes are to be construed together, and so as to make them consistent with each other if they can be. If consistent, one does not repeal the other. They appear to us to stand together, each in full force. The Sheriff may sell to reimburse himself, during the next year. But the State does not consent that he may use the name of the Governor as a bidder upon that occasion. If he delays to sell until he pays the taxes, he must find bidders. His delay is at that risk. The sale is then made for his benefit exclusively, both in form and fact, and not for that of the State; and therefore she will have nothing to do with it.
 

 The authority to make the State a bidder is a special one, and for the Sheriff’s benefit, to bid for her only where there is no other bidder, for a tax due to her, and to make a deed within a certain time, upon which the Sheriff shall have credit. It must therefore he strictly construed with respect to those acts, and the periods prescribed. The Sheriff, for instance, could not strike off less than the whole to the State; if ho did, it would
 
 *567
 
 be void, being beyond his restricted power. There is the same limitation on'his power .to vest the title in the State after the period for making the deed has elapsed. Upon these grounds* it is the opinion of the court, that the deed to the Governor is void, because it was not made or acknowledged at tiie court next succeeding the sale. The duty- of making it was the Sheriff’s; the exoneration and' advantage to be derived from it, in the contemplation .of the law, was his, and the consequence of the neglect must fall,' and iias fallen on him.
 

 ■ ¥c should very reluctantly hold,that “a due acknowledgment in open court/’ was not a signing, acknowledgment and delivery in court of a deed dated at that time, unattested, and not requiring any other attestation but the certificate of.the clerk to those facts. The recognition of the signature then, would seem to be a signing then. But the court has not' examined this point-very much, and therefore does not positively decide it;., deeming it safest, however, in all such cases, that ministerial officers should comply with the law to the-letter, especially- where they are themselves to take benefit by their own acts.
 

 The judgment of the Superior Court.is reversed, and judgment:upon-the case agreed rendered in this court for the appellant, the.original defendant.
 

 Per Curiam. — Judgment, reversed.