NEW HANOVER SHINGLE COMPANY ET ALS. v. JOHN L. ROPER
LUMBER COMPANY ET ALS.

(Filed 8 October, 1919.)

1. **State's Lands—Board of Education—Title—Presumptions—Rebuttal.**

The presumptions in favor of the title to State's swamp lands in favor of the board of education as successors to the "Literary Fund," are expressly excluded by the statute (Rev. Stat., ch. 67, sec. 3) when such lands have been theretofore entered and granted to individuals by the State, the presumption lasting only "until the other party shall show that he hath a good and valid title," and one claiming under a grant issued before the enactment of the statute, and connecting his title by mesne conveyances therewith, is entitled to recover against the one claiming under said board, unless his adversary can otherwise show a good title thereto.

2. **Taxation — Deeds and Conveyances — Statutes — Sheriffs—Settlement—Evidence—Declarations.**

One claiming title to lands under a tax deed given by the sheriff to the Governor in settlement for his taxes under Rev. Stat., ch. 102, sec. 60 *et seq.*, must make it sufficiently appear that the statute, strictly construed, was complied with, and the deed will be declared inoperative to pass the title when it does not appear that it was acknowledged in open court or that it has been registered in the clerk's office, as required by the statute, or that the sheriff had produced and filed the deed in the Secretary of State's office, etc.; and a recital in the attestation clause of the sheriff's deed that the deed was acknowledged in open court, and not made by an officer authorized to take acknowledgments, is alone insufficient as to such fact, and is only the unsworn declaration of the sheriff.

APPEAL by plaintiffs from *Guion, J.,* at April Term, 1919, of ONSLOW. This is an action to recover damages for trespass upon land in which the title was put in issue and was the real question involved in the trial.

Plaintiffs claim title to the land in question under a deed from the State Board of Education to one Carrier, dated 3 July, 1896. The plaintiff offered evidence tending to show that the description in the above deed covered the three tracts of land described in the complaint and evidence to locate said land. Plaintiffs then offered in evidence mesne conveyances, connecting themselves with the aforesaid deed from the State Board of Education. It was shown that all of these deeds connecting plaintiff with said deed from the State Board of Education described the lands set out in the complaint, and that all grantees through whom plaintiffs held appear to be purchasers for value. The deed from the State Board of Education was, however, objected to on account of alleged defect in its probate, and for that it was asserted by defendants it could carry no title to the grantees in any view.

The defendant offered in evidence grant No. 732 to David Allison, dated 29 May, 1795, and it was admitted that this grant covered the land in question. Defendant then offered mesne conveyances connecting themselves with said David Allison grant, one of which was executed and registered in the year 1859, showing that the grantee therein was a purchaser for value. The defendant further introduced *evidence tending to show possession of such lands covered* by the Allison grant, and their mesne conveyances, from the year 1906 to the present time.

The plaintiffs thereupon offered in evidence a deed from Lemuel Doty, sheriff of Onslow County, to William R. Davie, Governor of North Carolina, dated 10 October, 1799. It purports to convey the lands set forth in the David Allison grant and lying in Onslow County to the State under a tax sale made by the sheriff of Onslow County. This deed was also objected to by the defendants, both on the ground of its competency and its effect.

The attestation clause, the form of execution, and the attempted probate of these deeds were as follows:

Deed of State Board of Education: In witness whereof the said State Board of Education has caused its corporate seal to be hereunto affixed and these presents to be subscribed by its president, secretary and treasurer, and this the date above written.

ELIAS CARR,
*Governor and Ex Officio President State Board Education.*

JOHN C. SCARBOROUGH,
*Supt. Public Ex Officio Secretary of State Board Education.*
(Seal of the State of North Carolina Board of Education.)

STATE OF NORTH CAROLINA—Pender County.

The foregoing signature of John C. Scarborough, Superintendent of Public Instruction and *ex officio* secretary State Board of Education, W. H. Worth, State Treasurer and *ex officio* treasurer of the State Board of Education, and Elias Carr, Governor and *ex officio* president of State Board of Education, with seal of the Board of Education, is adjudged to be correct. Let said deed and certificate be registered.

20 July, 1896. W. W. LARKIN, C. S. C.

NORTH CAROLINA—Onslow County.

The foregoing deed of conveyance from the State Board of Education of North Carolina to Cassins M. Carrier, of the county of Jefferson, State of Pennsylvania, with the official seal of the State Board of Education thereto attached, having been exhibited before me, it is ad-

judged to be in due form and according to law. Therefore let the same, with this certificate be registered. This 30 July, 1896.

CHAS. GEROCK,
*Clerk Superior Court Onslow County.*

Filed for registration 30 July, 1896; registered in due form, 7 October, 1896.                    C. C. MORTON, *Register.*

Deed of Sheriff: In witness whereof, I have hereunto set my hand and seal. Signed, sealed, and acknowledged in open court, October Term, 1799.                    LEMUEL DOTY,
*Sheriff.* (Seal.)

Test: J. O. SCOTRAFF.

NORTH CAROLINA—Onslow County.

I hereby certify that the deed is recorded in Book A, page the one, agreeable to law.                    J. O. SCOTRAFF.

The foregoing is a true copy of the original on file in this office. Given under my hand, this 14 February, 1867.

R. W. BEST,
*Sec. of State.*

(State of N. C. Seal.)
Recorded with official seal.                    D. CASWELL,
*P. Secretary.*

Deed—Gor 155-442 acres, Onslow County—Lemuel Doty to the Governor.

STATE OF NORTH CAROLINA—Onslow County.

Received for registration 13 August, 1867, and immediately enrolled in due form of law.                    Z. M. COSTON, *Reg.*

His Honor held that these deeds were incompetent and invalid to pass title, and plaintiffs excepted.

Judgment in favor of defendants, and plaintiffs appealed.

*Winston & Matthews, J. O. Carr, E. M. Koonce and Cowper, Whitaker & Allen attorneys for plaintiffs.*
*Frank Thompson and L. R. Varser attorneys for defendants.*
*L. I. Moore for Roper Lumber Company.*

ALLEN, J. The statute conferring title to certain lands on the president and directors of the Literary Fund, to which the State Board of Education is the successor, excepts from its operation swamp lands "heretofore entered and granted to individuals" (Rev. Stat., ch. 67, sec. 3), and it follows that when the defendants introduced a grant from

the State to David Allison, issued in 1795, and mesne conveyances to the defendants, covering the land described in the complaint, they rebutted any presumption raised by statute in favor of the deed of the State Board of Education of date 3 July, 1896.

The effect of the introduction of the grant and the other conveyances was not only to show that the land had been granted to an individual before the statute in favor of the Literary Fund was enacted, and therefore the title did not pass by the terms and language of the statute, but also to establish title in the defendants, nothing else appearing, and the statute in favor of the deeds of the State Board of Education provides that the presumption shall last only "until the other party shall show that he hath a good and valid title to such lands in himself."

In this condition of the record, with nothing in evidence except the deed of the State Board of Education and mesne conveyances to the plaintiffs, and the Allison grant and mesne conveyances to the defendants, all covering the same land, the Court would unhesitatingly declare the title to be in the defendants, and it therefore became vital for the plaintiffs to establish the validity of the tax deed of Lemuel Doty, sheriff, to the Governor in 1799, for the purpose of showing that the title of Allison had been divested and did not pass to the defendants, and to again place the title in the State as vacant land subject to entry, which would belong to the Literary Fund under the statute, and then to the State Board of Education.

The sale for taxes was made under the act of 1798 (Rev. Stat., ch. 102, sec. 60 *et seq.*), of which *Chief Justice Ruffin* makes the following summary in *Avery v. Rose,* 15 N. C., 552: "It recites that the mode of selling lands for taxes as then established by law was insufficient to secure the collection of the revenue; and then provides, amongst other things, that, when no person will pay the taxes for a less quantity than the whole tract, it shall be deemed a purchase of the whole by the Governor, and the sheriff shall execute a conveyance to him and his successors for the use of the State; that it shall be the duty of the sheriff to perfect the deed by signing it, acknowledging and delivery thereof in the presence of the next county court; that the clerk shall register it in a book to be kept for that purpose, and after doing so shall certify the same and deliver it to the sheriff (who shall call on him for the same) within twenty days after the court; that the sheriff shall, before he settles his account with the Comptroller, deposit the deed with the Secretary of State, who shall record and keep it for the benefit of the State, and that the lands so conveyed shall be deemed vacant and subject again to entry. It then further provides that the Secretary of State shall give to the sheriff a certificate setting forth the quantity of land thus conveyed (the tax being then *ad numerum* not *ad valorem*), and

that upon the deposit thereof with the Comptroller, and the oath of the sheriff that he had conveyed in conformity to the requisitions of the act, all the lands by him sold for taxes, and thus purchased for the use of the State, the Comptroller (the requisites of the act being complied with) shall allow the sheriff in his settlement a credit for the tax on those lands and all charges on the sale, and his commissions thereon, as if the sum had been collected in money; and lastly, that the sheriff shall be credited in like manner in his settlement at home for the county and poor taxes."

The learned Chief Justice then proceeds to discuss the statute in connection with the other revenue laws then existing, and reaches the conclusion that the State is not a purchaser as usually understood; that the purpose of the statute was not to enable the State to acquire title to land but to collect her revenue; that as the State was in no danger of losing the taxes, which were charged against the sheriff, for which he and his sureties were liable, that the provisions of the statute were for the benefit of the sheriff to provide the means for obtaining credit with the Comptroller and being discharged from liability for the taxes, and that the duty was enjoined upon the sheriff to follow the terms of the statute and to see that others did so, and it was held that the statute must receive a strict construction, and that a failure on the part of the sheriff to acknowledge the deed at the *next* ensuing term of the county court was fatal to the deed to the Governor.

We quote at length from the opinion because of its learning and reasoning, and it is the only authoritative construction of the statute in our Reports.

"But to us it seems that the State cannot be deemed a purchaser, whose title is to be protected, notwithstanding irregularities, within any of the principles on which they are disregarded in sales on executions. The scope of the act is not to enable the State to reacquire her territory from her own citizens. She does not wish it. As soon as she gets it under this act, it is by the same act offered for private appropriation again, upon the same terms on which it was before granted. The policy of the State, in this statute and throughout our legislation, is to part on the most favorable terms with all her public domain, with a few exceptions, and not to become again the proprietor of any that has been granted, unless in case of necessity. This is clear from the act of 1793, which forbids the surrender of land to avoid the taxes. It is apparent in the act of 1798 itself, for she does not purchase, as a chapman does, for the least price, but only takes the land instead of the tax, when the tax can be got in no other way, and if she does not take the title, the sheriff is responsible for that tax and the owner for the accruing ones. The great object of this provision, therefore, is not to acquire the land

for the State, but to *secure* the *collection* of the taxes, to raise revenue, and have it duly accounted for and paid by the proper officers, and in justice to those officers, to make them account for and pay only such portions as they have collected or might have collected.  .  .  .

"The act assures him (the sheriff) such credit, upon certain conditions which it puts in his power to perform, and the performance of which it requires to be established by certain evidence. The case then is not one in which the interest of the creditor or the debtor requires the law to be indulgent in overlooking omissions in the mode of proceeding. It is one in which the creditor is secure at all events, because she can look to the sheriff and his sureties for the tax, but in which she will not, provided he makes it appear in the manner prescribed, which is plain and easily attainable, that she ought not. This part of the act is therefore substantially and really for the benefit of the sheriff himself, the person charged with the duty of selling and with the performance of all the subsequent measures of importance required for its completion. Upon established principles he ought to be held to strict performance. He is so held in this statute.  .  .  .

"The question has thus far been considered in reference to the words of this part of the statute and to the circumstance that the interest of the sheriff himself was principally concerned, and therefore that he should act in due time. Whatever interest the State has demands likewise his diligence throughout. It is important to her to know her actual net revenue, and what prior claims there are against her at the time it is paid in. She wishes to resell the land, that she has reluctantly taken back, and with as little delay as possible. An early and public notice of it in the county where it is situated is therefore deemed important. She wishes to avoid and detect frauds attempted on her, and therefore while the whole matter is of recent occurrence she requires that a sale made shall be acknowledged of record and in open court of that county, that no pretended sale may at a distant day be imposed on her and she brought in conflict with one of her own citizens. Every act of omission which tends to defeat these views is inconsistent with the real intention of the Legislature and cannot be tolerated. The State does not take the land but as a credit to the sheriff for the tax, and no conveyance to the State is to be taken as valid within the statute but such an one on the production of which the sheriff would be entitled to credit for tax. From this it would result that the sheriff must procure the other officers to do their duty, because otherwise the State is not bound to accept the deed, and the title does not vest in her, under this law, in any other case.  .  .  .

"The authority to make the State a bidder is a special one and for the sheriff's benefit, to bid for her only where there is no other bidder for a

tax due to her, and to make a deed if no other bidder, for a tax due to her, and to make a deed within a certain time upon which the sheriff shall have credit. It must therefore be strictly construed with respect to those acts and the periods prescribed. . . . Upon these grounds it is the opinion of the Court that the deed to the Governor is void, because it was not made or acknowledged at the court next succeeding the sale."

This authority was cited and approved in *Stewart v. Pergusson,* 133 N. C., 281.

Applying these principles, we must hold that the sheriff's deed is not valid and did not have the effect of passing title to the State, as it does not appear that it was acknowledged in open court at all, much less at the next succeeding term, or that it has been registered in the clerk's office as required by the statute.

The recital in the attestation clause of the deed that it was acknowledged in open court, appearing before the signature, not being made by an officer authorized to take the acknowledgment, amounts to nothing more than the unsworn declaration of the sheriff of what he intended to do and not of what he had done.

There is no evidence of any probate of the deed in any form, and consequently no room for the application of the doctrine of *Starke v. Etheridge,* 71 N. C., 240, and of other cases, holding that when the proper officer certifies that an instrument has been duly proven, without setting out his acts, it will be presumed that the probate was taken according to law, and no presumption can arise from registration, as it appears that the register acted upon the certified copy and the indorsements thereon sent to him in 1867, and not upon any other probate or evidence of acknowledgment.

Again, the tax deed bears date 16 October, 1799, and purports to have been made pursuant to a sale to collect the taxes of 1798, and of this phase of the case the Court says in the *Avery case:* "It (the statute) requires him (the sheriff) to produce and file the deed in the office of the Secretary of State before he settles for the taxes, and to make oath that he has conveyed all the lands struck off to the State, in conformity to the requirements of the act.

"The deed must therefore have been made, recorded and filed before the first day of October of the year in which the tax is payable (the succeeding year, in this case 1799). This of itself would be fatal to the plaintiffs' title."

This view of the case renders it unnecessary to consider the doctrine of ancient documents, or to pass on the objections to the deed of the

State Board of Education, but we would not be understood to approve the form of the execution of the deed or of its attempted probate.

Affirmed.