## DAVID HOPPER *vs.* THE EXECUTORS OF JOHN MALLESON and others.

1. The power to sell land for the payment of taxes, is a naked power, not coupled with an interest, and must be exercised in strict accordance with the provisions of the statute. Every prerequisite to the exercise of the power must precede it.

2. To establish a title under a sale for taxes, it is incumbent on the purchaser to show that all the prerequisites to the exercise of the power of sale have been complied with. The deed is not even *prima facie* evidence of that fact.

3. It is essential to the validity of a sale of land, under the " act to make taxes a lien on real estate in the county of Passaic, and to authorize the sale of the same for the payment thereof," (*Pamph. L.*, 1852, *p.* 247,) that it should appear that the tax was assessed on account of the property sold.

4. The recital of the tax warrant, " whereas it appears to the mayor and aldermen of the city of Paterson, that an assessment of four dollars and fifty cents of taxes, &c," is not legal evidence of the fact of an assessment, nor of demand of payment.

5. The assessment *itself* is the only competent and legal evidence of the fact of an assessment.

6. Where the tax warrant directs a sale to be made to raise a sum larger than the whole amount due, it is a clear excess of authority, and renders the warrant, so far as it affects the land in question, null and void.

7. Even if all the requirements of the statute had been strictly complied with, so as to confer upon the purchaser at such sale a valid title against the heirs of the former owner, and all claiming under them. a prior mortgage given by their ancestor would not thereby have been extinguished.

8 The phrase *owner or owners (Nix. Dig.* 853, § 77, *and Pamph. L.,* 1852, *p.* 249, § 7,) was used to denote the *owner of an estate in possession at the time of the assessment,* and not a prior owner, or the owner of an estate in expectancy, or of any executory or contingent interest, and the design of the act was to make the interest of such owner only, and those claiming under him, liable for the tax assessed.

9. The right of a mortgagee is not defeated by a tax sale, where the mortgage was not given by those who were owners of the land at the time of the assessment, or against whom the tax was assessed, but is a title paramount to theirs. Such mortgage is a valid and subsisting encumbrance upon the land in the hands of the purchaser at the sale.

---

The case was heard upon the bill and proofs.

*Gledhill,* for complainant.

THE CHANCELLOR. The mortgage which the complainant seeks to foreclose, was given by Malleson and wife on the eleventh of October, 1847, upon a house and lot in the city of Paterson. On the fifteenth of January, 1848, the mortgagor died. Upon his death, the legal title to the mortgaged premises descended to his children, some of whom were minors. By his will, the executors were authorized to sell the land, and in the meantime to apply the net rents and profits to the support and education of his two youngest children.

In 1858 the premises were sold for a term of sixty years, for the sum of $36.41, by virtue of a tax warrant, to satisfy $20.70, the arrears of taxes which were assessed on account of the land, against the estate of Malleson, for the years 1854–5–6, together with fees, costs, and expenses. The value of the lot is about $900. The defendants claim that the purchaser acquired an absolute title to the premises, and that all other rights in, or encumbrances upon the property, are extinguished.

The only ground of controversy is, whether the title ac-

quired under the sale for taxes is valid, and if valid, whether it is paramount to the title of the mortgagee.

The power to sell land for the payment of taxes, is a naked power, not coupled with an interest, and must be exercised in strict accordance with the provisions of the statute. Every prerequisite to the exercise of the power must precede it. To establish a title under a sale for taxes, it is incumbent on the purchaser to show that all the prerequisites to the exercise of the power of sale, have been complied with.

The deed is not even *prima facie* evidence of that fact. *Stead's Ex'rs* v. *Course*, 4 *Cranch* 403 ; *Williams* v. *Peyton's Lessee*, 4 *Wheaton* 77 ; *Sharp* v. *Speir*, 4 *Hill* 76 ; *Early* v. *Doe*, 16 *How.* 610, and cases there cited.

The act under which this sale was made, declares that the tax shall be and remain a lien on the real estate, on account of which the assessment shall be made. *Pamph. Laws* 1852, *p.* 247. There is no competent evidence that the assessment for the year 1854 was made on account of the land which was sold for the payment of the tax. The assessment for that year contains no description whatever of the land assessed. Opposite the words " estate of John Malleson," under the column headed real estate, is the following entry : " 1 H. & 1 L." It may be conjectured that the entry was designed to indicate one house and lot, on account of which the assessment was made. But it does not appear, nor can it be even conjectured from anything apparent on the assessment, what house or lot was intended to be indicated. It is essential to the validity of the proceedings, that it should appear that the tax was assessed on account of the property sold. There is no evidence whatever of the fact, except a recital in the tax warrant in these words : " whereas it appears to the mayor and alderman of the city of Paterson, * * * that an assessment of four dollars and fifty cents of taxes for the year 1854, was made by the assessor of the South Ward against the estate of John Millen, on account of the following lots of land and premises ;" describing the lot

in question. Assuming that Millen is a clerical mistake for Malleson, how did the fact appear to the mayor and aldermen that any such assessment was made? Certainly not by the assessment itself, which is the only competent and legal evidence of that fact The recital of the warrant is not legal evidence of the fact of an assessment, nor of demand of payment. There must be other and competent evidence that there was an assessment, and that it was legally made.

The tax warrant recites that the sum of seven dollars and fifty cents was assessed for the year 1856, and directs a sale to be made to raise $21.00, for taxes assessed against the land for the years 1854–5–6. It appears by the duplicate, that the tax assessed for the year 1856, was but $7.20, and that the whole amount due for taxes from the estate of Malleson, was but $20.70. This was a clear excess of authority, and rendered the warrant, so far as it affects the land in question, null and void.

These, with other objections equally vital, are fatal to the validity of the sale for taxes. No valid title was acquired by the purchaser under that sale, and none could be transferred to his alienees.

But if the prerequisites to the sale had been complied with, and the power had been exercised in strict conformity with the statute, so as to confer a valid title against the heirs of John Malleson and those claiming under them, I think it would not have extinguished the mortgage of the complainant.

The tax sale was made under the provisions of "an act to make taxes a lien on real estate in the county of Passaic, and to authorize the sale of the same for the payment thereof," approved March 19th, 1852. *Pamph. L.* 247. By the second section, it is enacted that any assessment of taxes made in said county against any person, on account of any real estate of such person or body corporate, shall be and remain a lien on all the lands, tenements, hereditaments, or real estate, on account of which said assessment shall be made, with lawful interest, and costs and fees in relation to

the assessment and collection thereof, for the space of five years from the time when the taxes became payable. By the sixth section of the act, it is enacted that the land shall be sold and conveyed to such person as will agree to take the same for the shortest term, and pay the tax, interest, costs, fees, and expenses; and that the grantee, by virtue of such sale and conveyance, shall hold and enjoy the said real estate during the term for which he shall have purchased the same, for his own use and benefit, "against the owner or owners thereof, and all and every person or persons claiming under her, him, or them, until the said term shall be fully completed and ended."

The power of the legislature, by virtue of its sovereignty, to make the tax a charge upon the estate of all parties interested in the land, and to make the tax title paramount to all other and prior claims and encumbrances, is not questioned. But has that power been exercised in the act under consideration? Was it the intention of the legislature, that the tax deed should operate to destroy all prior interests in the estate, vested or contingent, executed or executory, in possession or expectancy? Is the title under the deed paramount to the widow's right of dower? Or will the sale of land, to pay the tax of a tenant for life, extinguish the title of a remainderman or reversioner? The legislature, I think, did not contemplate such a result. There is nothing in the language of the act to indicate such intention. It is not declared that the title of the grantee in the tax deed shall be paramount to all other interests, nor that he shall hold it against all claims and encumbrances whatever. Nor even that he shall hold it during the term for which he purchases, but that he shall hold it against the owner or owners thereof, and all persons claiming under him or them, until said term shall be ended. Our tax laws have always contemplated that lands shall be assessed to the owner or owners of the land at the time of the assessment. The act of 1854, which makes taxes a lien upon land throughout the state, directs that all lands shall be assessed in the name of the owner. The second

section of the act in question declares, that any assessment of taxes against any person or persons, on account of lands " *of such person or persons,*" that is, of lands of which he or they are the owner or owners, shall be a lien upon the said lands ; and by the seventh section it is enacted, that notwithstanding any mistake in the name or names, or omission to name the real owner or owners of the land in assessing the tax, the assessment shall be valid. The phrase owner or owners, was used to denote the owner of an estate in possession at the time of the assessment, and not a prior owner or the owner of an estate in expectancy, or of any executory or contingent interest, and the design of the act was to make the interest of such owner only, and those claiming under him, liable for the tax assessed. That this is the true interpretation of the act, is rendered highly probable by the whole history and policy of our legislation on the subject. The tax law requires the land to be assessed against the owner, and in his name ; it requires a personal demand of the tax, and notice of the time of the meeting of the commissioners of appeal. In case of a default in payment, after proof of demand, it authorizes the sale of the delinquent's goods, or the arrest of his body. Where the tax is assessed upon unimproved or untenanted lands, the wood, timber, or herbage might be levied upon by distress and sale, for the payment of the tax. But in no case, by the general tax law of the state, was land authorized to be sold for the payment of taxes. Nor was the tax a lien even, upon the interest or estate in the land of the delinquent tax payer. If there was no tenant upon the land, and no vendible property to be taken by way of redress, there was no means of enforcing the payment of the tax against a non-resident land owner. That legislation should have furnished a remedy for this evil, by subjecting the land of the delinquent tax payer to the lien of the tax, and to be sold for its satisfaction, was to have been anticipated. But it was not to have been anticipated, that the legislature designed utterly to abandon its long approved policy of protecting the rights of the tax payer, subjecting even his personal

property to sale, only upon default in payment after notice and demand ; and to subject the estate of the owners and *bona fide* encumbrancers of estates in the lands to sale, for the default of another, without notice of the existence of the tax, or an opportunity of redemption.

It will be observed that the law applies as well to resident as to non-resident tax payers, and makes no provision whatever for redemption, either by parties having estates in the land, or by mortgagees. If the law was designed to operate solely upon the estate of the delinquent tax payer, there would seem to be no necessity for such provision. But the privilege of redemption in favor of mortgagees, and owners of rights in land sold for the default of a delinquent tax payer, is so obviously proper, and its omission so inconsistent with ordinary ideas of justice, that it will be found to be a very general, if not universal, provision of statutes designed to affect the estate of others than the delinquent. Its omission in the present act, is entitled to some weight in determining the real intention of the legislature.

If the tax for the whole value of the land were assessed upon the land as an entire thing, against the mortgagor, or party in possession, there would seem to be more propriety in subjecting the entire estate, including both the interest of the mortgagee and mortgagor, to the operation of the tax sale. But under our system of taxation, the mortgagee is taxed individually for his interest in the land. The mortgagor is assessed only for the value of the equity of redemption. Thus to distinguish between the estate of the mortgagor and mortgagee, and yet to sacrifice the interest of the mortgagee without opportunity of redemption, for the default of the mortgagor in paying the tax assessed against his interest in the land, could scarcely have been within the contemplation of the legislature.

It cannot be denied that the question is not entirely free from difficulty, and that it has given rise to some conflict of opinion. But if it be admitted that the foregoing view is erroneous, still the right of the complainant under his mort-

gage is not defeated by the tax sale, because the mortgage was not given by those who were owners of the land at the time of the assessment, or against whom the tax was assessed. The mortgage was given in 1847. Malleson, the mortgagor, died in 1848. The legal estate in the land descended to his heirs. The equitable interest was, by the will of the mortgagor, disposed of for the benefit of certain of his minor children. It was sold for taxes assessed in 1854–5–6 to " the estate of John Malleson." Admitting, as was held in *State* v. *Collector of Jersey City*, 4 *Zab.* 108, that the form of the assessment was sufficient to indicate the heirs or devisees, without naming them, it is clear that the mortgage of the complainant is not within the provision of the statute. John Malleson, the mortgagor, was not the owner at the time of the assessment. The heirs of Malleson were then the owners, and the mortgagee does not claim under them, but by title paramount to theirs.

It will be decreed that the complainant's mortgage was not extinguished by the tax sale, but is a valid and subsisting encumbrance upon the land in the hands of the purchaser at that sale. As the claims of the children of Malleson, the mortgagor, and those claiming under the tax sale, are not now designed to be finally disposed of, the surplus money, if any there be, after satisfying the complainant's demand, will, at the final decree, be directed to be brought into court to abide the further order of the court.