## DUMONT and others *v.* FRY, Trustee, etc., and others.

(*Circuit Court, S. D. New York.* November, 1882.)

1. BANKRUPTCY—SURETY GUARANTYING ANY UNPAID BALANCE—APPROPRIATION OF DIVIDEND.

C. & Son hypothecated certain bonds to S. & Sons upon agreement that the bonds to the extent of $100,000 should be held by the latter as a continuing security for *any overdraft or unpaid balance* that might arise upon the account of the New Orleans National Banking Association with S. & Sons. The New Orleans National Banking Association and S. & Sons having gone into bankruptcy, the claim of S. & Sons against said association, amounting to $195,315.13, was proved, and a dividend of 55 per cent. thereon paid to their trustee. *Held,* that the whole of this dividend should be applied to discharge the unsecured portion of the claim of S. & Sons against the banking association, and not ratably upon that part secured by the collaterals as well as upon that part unsecured.

2. SAME—GUARANTY OF PART OF DEBT.

Where a surety guaranties a limited part of a debt and not the unpaid balance of a debt, with a limitation as to the amount of the liability in case of insolvency, whatever is paid as a dividend arising from that part of the debt must be applied to discharge that portion; but when the guaranty contemplates the protection of the creditor against *any* ultimate balance that may arise upon the dealings between the debtor and the creditor, this rule does not apply.

*E. A. Hutchins,* for complainants.

*Platt & Bowers* and *Man & Parsons,* for defendants.

WALLACE, C. J. The question now raised upon the settlement of the decree was not suggested at the hearing of the cause or upon the briefs of counsel, doubtless upon the assumption that there would be no controversy in regard to it, the principal contention being disposed of. It was decided that the hypothecation of the collaterals made by Cavaroc & Son to Schuchardt & Sons was upon the agreement that the bonds, to the extent of $100,000, should be held by the latter as a continuing security for any overdraft or unpaid balance that might arise upon the account of the New Orleans National Banking Associa-

tion with Schuchardt & Sons. The bonds were held by Schuchardt & Sons pursuant to the terms of the hypothecation until the suspension of the banking association, when the latter went into liquidation. As was subsequently ascertained, the unpaid balance of the account due from the banking association to Schuchardt & Sons was the sum (adding interest) of $195,315.63. The comptroller of the currency, pursuant to the provisions of the laws of congress respecting national banking associations, proceeded to appoint a receiver of the New Orleans National Banking Association, and to wind up its affairs. By section 5236, Rev. St., the comptroller is required to make a ratable dividend of the moneys arising from the assets of such associations upon all claims proved to his satisfaction. Fry, as trustee in bankruptcy of Schuchardt & Sons, proved their debt of $195,315.63 against the banking association to the satisfaction of the comptroller. The comptroller thereafter declared a dividend of 55 per cent. to the creditors of the banking association, and paid Fry such a dividend upon the claim proved by him. The question now is whether Fry can apply the whole payment thus received, first, to discharge the unsecured portion of the claim of Schuchardt & Sons against the banking association, or whether he must apply it ratably upon that part secured by the collaterals as well as upon the part unsecured.

Obviously this is not the ordinary case when a creditor holding two demands against his debtor, one of which is secured and the other is not, may exercise his right to appropriate a payment in the absence of any application made by the debtor at the time. Nor is it the case where, neither party having made application of a voluntary payment, it devolves upon the court to make the just and equitable appropriation. The payment here was not made by the debtor, and the case, therefore, is not controlled by the rules ordinarily governing the appropriation of payments made to creditors by debtors. The payment here was made by the law—the statutes of congress which vested the comptroller of the currency with authority to distribute the assets of the banking association, and which prescribed the mode of distribution. Neither the debtor nor the creditor could exercise the right to determine the application of the dividends. If the case turned merely upon the law of the appropriation of payment, it would not be a doubtful one. The general rule is that where the payment is not a voluntary one, but is made under legal proceedings, it is to be appropriated to all the demands against the debtor ratably, (*Blackstone* v. *Hill*, 10 Pick. 129; *Com. Bank* v. *Cunningham*, 24 Pick. 270;) and it would seem clear that as each dollar of the demand

earned its ratable proportion of the sum realized from the assets of the debtor, the sum earned by one portion of the demand could not be credited to the other, but should be applied ratably upon each dollar of the demand, whether secured or unsecured.

But the question here depends, not upon the law of the appropriation of payments, but upon the effect of the agreement between the sureties and the creditors. If Cavaroc & Son had become sureties for $100,000 of any advance that Schuchardt & Sons should make to the New Orleans National Banking Association, and the Schuchardts had advanced $200,000, it would be plain, upon authority, that the dividend earned by the whole advance should be applied ratably. As between the surety and the creditor that would be a case where the latter held two distinct demands, and a dividend arising from one of them could not be applied to the other without diverting it from its proper fund. But here the Cavarocs agreed with the Schuchardts that the latter might advance any sum they might see fit to the New Orleans National Banking Association, and that the Cavarocs' bonds, to the extent of $100,000, should be security for any unpaid balance of the advances. The law can make no application of the payments received on account of the advances contrary to the agreement between the parties; and, as it was agreed that the Cavarocs should be sureties to the extent of $100,000 for any unpaid balance arising between the primary parties, the general doctrines of the appropriation of payments cannot be invoked to defeat the agreement. A careful reading of the English authorities supports this conclusion. The result is determined by the character of the undertaking of the surety in each case. *Ex parte Hope,* 3 Montagu, D. & D. 720; *Midland Banking Co.* v. *Chambers,* 38 Law J. Ch. 478.

As is held in *Ellis* v. *Emmanuel,* 1 L. R. Exch. Div. 157, "it is a question of construction on which the court is to say whether the intention was to guaranty the whole debt, with a limitation on the liability of the surety, or to guaranty a part of the debt only."

In *Hobson* v. *Bass,* 6 L. R. Ch. App. 792, the undertaking of the surety was construed as though it read: "I guaranty the payment of all goods supplied, but my liability is not to be increased by their amount exceeding £250."

In *Ex parte Rushforth,* 10 Ves. Jr. 409, the same interpretation, substantially, was placed on the undertaking of the surety.

In *Paley* v. *Field,* 12 Ves. Jr. 434, the engagement of the surety recited the intention of the parties to be that the bankers should not be indemnified by the surety for any loss which they should sustain

by giving credit to the principal debtor beyond the sum of £1,500. The master of the rolls says: "The instrument marks distinctly that the sum for which the surety was to be answerable was as against him to be considered as the whole amount of the creditor's demand." *Bardwell* v. *Lydall,* 5 Moore & P. 327, is decided on the authority of *Paley* v. *Field,* but upon the facts cannot be reconciled with it, the guaranty being to secure a running balance of account.

In *Raikes* v. *Todd,* 8 Adol. & E. 846, and in *Thornton* v. *McKewan,* 1 Hem. & M. 525, the guarantee was to hold the plaintiff harmless for advancing a specified sum to the debtor from time to time, as he might require.

In *Gee* v. *Pack,* 33 Law J. (N. S.) 49, a note was pledged as security to repay an advance of £300 "now or hereafter to be made" on a banking account with a third person. COBURN, C. J., holds that the "document amounts to a promise to be liable for an advance to the extent of £300," and "not a general promise to pay £300 on any balance, however arrived at, or that may remain due on a general advance to the principal."

In all these cases an advance was made in excess of the sum guarantied, and upon the debtors becoming insolvent the creditor received a dividend on the whole advance, and it was held that the dividend was to be applied ratably on the secured and unsecured portion of the whole demand. They all proceed upon the distinction that the surety had guarantied a limited part of a debt, and not the unpaid balance of a debt, with a limitation as to the amount of liability,—a distinction which seems subtle, but which rests on the supposed intention of the parties. In a guaranty of a limited part of a debt the parties to it do not contemplate, as between themselves, any augmentation of the debt. Whatever is paid, therefore, as a dividend arising from that part of the debt must be applied to discharge that portion. As between the surety and creditor it is as though no other debt were held by the creditor against the debtor.

To apply the same rule when the guaranty contemplates the protection of the creditor against any ultimate balance that may arise upon the dealings between the debtor and creditor, would be to ignore the intention of the parties to the guaranty.

The conclusion is therefore reached that the bonds of the Caverocs, having been pledged to secure any unpaid balance arising upon the account of the New Orleans National Banking Association to Schuchardt & Sons, it is quite immaterial to the former how, when, or by whom part of that balance has been paid, so long as $100,000 re-

mains unpaid. If, however, the dividends reduce the balance below the amount of the pledge, the sureties are to have the benefit of the reduction, because upon payment of the debt they would be subrogated to the creditor's lien upon the bonds.

See S. C. 12 Fed. Rep. 21; 13 Fed. Rep. 423