## STEWART v. PERGUSSON.

(Filed November 3, 1903.)

TAX TITLES—*Deeds—Internal Revenue—Rev. Stats. U. S., secs. 3182, 3183, 3188, 3197, 3199, 3203—The Code, sec. 1267.*

A purchaser claiming land under a sale for internal revenue taxes against the owner cannot sustain his title under the deed of the collector if he fails to show independently of the mere recitals in the record or in his deed that a return was made by the person liable to be assessed, or that the commissioner of internal revenue had made the assessment, or that a warrant of distraint had been issued, or that a certificate of purchase had been given to the purchaser at the sale.

CLARK, C. J., dissenting.

ACTION by J. T. Stewart against J. M. Pergusson and others, heard by Judge *T. J. Shaw* and a jury at October Term, 1902, of the Superior Court of STOKES County.

This is a special proceeding, commenced before the Clerk of the Superior Court, in which the petitioner prays that a sale be ordered of his intestate's land for the payment of debts. The case was transferred from the Clerk to the Superior Court at term for the trial of the issues raised by the pleadings.

The petition is in the usual form, and its allegations, which were sufficient to entitle the petitioner to the relief demanded, were sustained by the evidence, if the jury believed it.

The heirs of the intestate, who are defendants, made no resistance to the order, but the defendant, J. M. Pergusson, answered and alleged that he purchased the land at a sale of the same for taxes by the Collector of Internal Revenue for the district in which it is situated. The decision of the case turns upon the validity of that sale. Upon that question, as will appear hereafter, the Court charged adversely to the de-

fendant. It will be necessary to reproduce so much of the case only as will show the state of the evidence upon which that charge was given. The defendant introduced what is called a "supplemental report of seizures and sales of real estate in the Fifth Collection District of North Carolina for the month of March, 1897," it being known in the case as "Exhibit A." This report was made by the deputy collector and contains a statement by him that a certain amount of taxes had been assessed against several packages of spirits, the property of W. B. Dodson, Sr., the plaintiff's intestate, and that he had served upon the latter a notice and demand for the same on February 27, 1897. It is also stated in the report that the date of the warrant of distraint and the date of its return are unknown, but that the warrant was directed to the deputy collector, and that the land was advertised at three public places in the county for sale on the premises; that the sale was made on March 29, 1897, for $50 to the defendant, J. M. Pergusson, but that no certificate of purchase was ever issued to him. Defendant then offered to introduce in evidence a deed from the collector to said Pergusson, reciting in the premises or preamble that an assessment for the amount due the United States on account of the stamp tax on spirits had been made, and that there had been a default by the intestate in payment, after due and lawful notice of the same and demand for the payment thereof, and that the land had been seized under a warrant of distraint issued by the then collector and sold to the highest bidder for the taxes and accrued costs, and that at the sale the defendant Pergusson became the purchaser of the land. The deed further recites generally that the provisions of the law in such cases made and provided had in all respects been complied with. The land is then conveyed "by virtue of the power vested by law" in the collector to the said Pergusson in fee with special warranty. The deed is signed by H. S. Harkins, Collector

of Internal Revenue, without any seal opposite his name, but the word "seal," with a scroll around it, appears at the left of the signature, and it is stated in the testimonium clause that he had set his hand and affixed his official seal to the deed.

The defendant then proposed to introduce in evidence a report of collections for March, 1897, made by the deputy collector (who seems to have seized the property and conducted the sale) to the collector. In this report, so far as it relates to the intestate's land, is set forth the amount of taxes, penalties, interest, costs due on warrant of distraint against said land, the cost of advertising the sale, the amount of the purchase price and the name of the purchaser, and the report closes with a statement of the total amount of collections on account of the assessments, together with costs and expenses. There was no certificate of authentication annexed to this report. The plaintiff objected to the admission of this evidence; the objection was sustained, and defendant excepted.

The deputy collector who made the sale testified that he notified the intestate of the assessment and that intestate waived a seizure and sale of his personal property and told him to sell his land and make the money. He identified the report which was excluded by the Court as the one he made to the collector. He then stated that the deed of the collector, H. S. Harkins, who was successor to S. L. Rogers, the collector in office at the time the sale was made, and which was dated August 19, 1898, was actually executed more than twelve months after the sale. He further testified that Pergusson had paid him the purchase money, but he did not state when it was paid. There was evidence tending to show that the intestate, at the time of the levy or seizure of the land, had personal property sufficient to pay the taxes, and that, after the death of the intestate, the defendant Pergusson took possession of the land. There was also evidence tending to show that the sale of the land had not been advertised in the

newspaper more than eighteen days. The Court charged the jury that if they believed the evidence they should answer the issues in favor of the plaintiff. The issues and the answers thereto are as follows:

1. Was plaintiff's intestate seized in fee of the land described in the complaint, as alleged in the complaint? Ans. Yes.

2. Did plaintiff's intestate have sufficient personal property to pay off the debts of said intestate and the costs of the administration? Ans. No.

We have not set forth any of the evidence relating to the second issue, as it is not material in the view we take of the questions involved.

From a judgment for the plaintiff the defendants appealed.

*Lindsay Patterson* and *W. W. King,* for the plaintiff.
*Watson, Buxton & Watson,* for the defendants.

WALKER, J. (after stating the facts). We are of the opinion, upon the foregoing statement of the case, that the title of the intestate, W. B. Dodson, Sr., was not divested by the sale for taxes. It is provided in the Revised Statutes of the United States as follows: "The Commissioner of Internal Revenue is hereby authorized and required to make the inquiries, determinations and assessments of all taxes and penalties imposed by this title, or accruing under any former internal revenue act, where such taxes have not been duly paid by stamp at the time and in the manner provided by law, and shall certify a list of such assessments, when made, to the proper collectors, respectively, who shall proceed to collect and account for the taxes and penalties so certified." Sec. 3182. "It shall be the duty of the collectors or their deputies in their respective districts, and they are authorized, to collect all the taxes imposed by law, however the same may be desig-

nated." Sec. 3183. "All returns required to be made by any person liable to tax shall be made on or before the tenth day of each month, and the tax assessed or due thereon shall be returned by the Commissioner of Internal Revenue to the collector on or before the last day of each month." Sec. 3185. "If any person liable to pay any taxes neglects or refuses to pay the same within ten days after notice and demand, it shall be lawful for the collector or his deputy to collect the said taxes by distraint and sale in the manner hereinafter provided." Sec. 3187. "In such case of neglect or refusal the collector may levy or, by warrant, may authorize the deputy collector to levy upon all property and rights to property, except such as are exempt, belonging to such person." Sec. 3188. "When distraint is made as aforesaid the officer charged with the collection shall make or cause to be made an account of the goods or effects distrained, a copy of which, signed by the officer making such distraint, shall be left with the owner or possessor of such goods or effects, or at his dwelling or usual place of business, with some person of suitable age and discretion, if any such can be found, with a notice of the sum demanded and the time and place of sale." Sec. 3190. The law then provides for a public sale of the property distrained to the highest bidder, and requires, when the same is not bid in for the government, that the collector shall give to the purchaser a certificate of purchase, "which shall set forth (1) the real estate purchased; (2) the name of the person for whose taxes the same was sold; (3) the name of the purchaser, and (4) the price paid therefor; and that if the said real estate be not redeemed in the manner and within the time prescribed, the said collector or deputy collector shall execute to the purchaser, upon a surrender of the certificate, a deed of the real estate purchased by him as aforesaid, reciting the facts set forth in said certificate and in accordance with the laws of the State in which such real estate is situate

upon the subject of sales of real estate under execution."
Rev. Statutes, secs. 3197 and 3198. It is further provided
that "the deed of sale given in pursuance of the preceding
clause shall be *prima facie* evidence of the facts therein stated,
and if the proceedings of the officer have been substantially
in accordance with the provisions of law, shall be considered
and operate as a conveyance of all the right, title and interest
the party delinquent had in and to the real estate thus sold."
Sec. 3199. Provision is also made for keeping a record in
the collector's office of all seizures and sales, which record is
required to be certified by the officer who made the sale. A
copy of said record, duly certified by the collector, is made
evidence of the truth of the facts therein stated in any court.
Sec. 3203.

It appears in this case that there was no evidence, and cer-
tainly no competent evidence, to show that a return had been
made by the party liable to be assessed, or that the Commis-
sioner of Internal Revenue had made the assessment, or that
a warrant of distraint had been issued, or that a certificate of
purchase had been given to the purchaser at the sale, all of
which must appear, not merely by recital in the records or in
the deed, but by independent proof. *Hopper v. Maleson,* 16
N. J. Eq., 382. There are other defects in the proceedings
leading up to the sale of the land, but those above pointed out
are fully sufficient to invalidate the sale.

It is well settled that a purchaser at a tax sale must show
strict compliance with all the substantial or material require-
ments of the law under which the sale was made, in order to
establish his claim that he has acquired the title of the owner.
*Avery v. Rose,* 15 N. C., 549; *Taylor v. Allen,* 67 N. C., 346;
*Ronkendorf v. Taylor,* 4 Pet., 341; *Early v. Doe,* 16 How.,
618; *Cox v. Stafford,* 90 N. C., 698; *Jackson v. Shepard,* 7
Cowen (N. Y.), 88; 17 Am. Dec., 502; *United States v.
Allen,* 14 Fed. Rep., 203; *Emery v. Harrison,* 13 Pa., 317.

As the collector has no general power to sell land at his discretion for the non-payment of an assessment, but a special power only to sell under the particular circumstances mentioned in the act, those circumstances must exist or the power does not arise. It is a naked power, not coupled with an interest, and in all such cases the law requires that every prerequisite to the existence of that power must precede its exercise, and that the officer must pursue the power strictly or his act will not be sustained by it. *Williams v. Peyton,* 17 Wheat., 78. As the burden is on the party who asserts title in himself to furnish the evidence necessary to support it, if the validity of his title depends upon the performance of a precedent act it is his duty to show that the act has been performed, or to establish any other fact which is requisite to the support of his claim. "It forms a part of his title; it is a link in the chain which is essential to its continuity and which it is incumbent on him to preserve. These facts should be examined by him before he becomes a purchaser, and the evidence of them should be preserved as a necessary muniment of title." 17 Wheat., at p. 79. This principle is applicable with all its force and strictness to a sale of land for taxes. The title of the owner of the land will not be divested by anything less than a full compliance with all the material provisions of the law. Failure to comply strictly with those provisions which are merely directory may not affect the validity of the sale, but not so with those that are essential. If this be true, how has the defendant acquired title to the land he claims by virtue of the sale of the collector as against the heirs of the intestate? The first link in his chain of title is missing. He has not shown by any legal proof that an assessment of taxes was made by the Commissioner of Internal Revenue, and this assessment, as we have seen, must be made before the collector can be clothed with any power or authority whatever to take action for the condemnation and sale of the

land.  *United States v. Pa. Railroad Co.,* 1 Fed. Rep., 97;
*Holden v. Eaton,* 8 Pick. (Mass.), 436.  It was a basic fact
to be established in the defendant's case, and without it his
claim of title has no foundation to rest upon.  In addition to
this, he has failed to show, even if there had been an assess-
ment, that the collector proceeded regularly and in due con-
formity with the statute in collecting the tax by seizure and
sale of the intestate's property.  There was no warrant of dis-
traint, so far as appears, nor was any certificate of purchase
delivered to the purchaser at the sale, all of which are made
essential requisites by the statute.  *United States v. Pa. Rail-
road Co., supra.*

But the defendant contends that the deed of the collector is
*prima facie* evidence that every act which ought to have pre-
ceded the execution of the deed had been performed, and that
the burden therefore is upon the plaintiff to show that the
deed is not good and did not convey the title.  If this propo-
sition be true it may be that the recitals in the deed are suffi-
cient in their scope to show that the assessment of the taxes
had been duly made and that the necessary steps had been
taken to subject the land to their satisfaction, upon the failure
of the owner to pay, but we do not think that the deed is
*prima facie* evidence of anything except that which is re-
quired to be stated in the certificate of purchase, and the facts
so required by the statute to be stated are as follows: 1. The
name of the person for whose taxes the land was sold.  2. The
name of the purchaser at the sale.  3. The real estate pur-
chased.  4. The price paid therefor.  And these do not em-
brace the three facts, or any of them, which we have already
said the defendant failed to establish by proof at the trial.
The statute, by clear implication, declares that the recitals
of the deed shall be *prima facie* evidence only of the facts
stated in the certificate, and any recital of a fact not set forth
in the certificate is therefore no evidence of that fact.  *Hopper*

v. *Malleson, supra; Keith v. Preston*, 5 Grat. (Va.), 120; *Emery v. Harrison, supra.* It has been expressly so adjudged. *Fox v. Stafford*, 90 N. C., 296; *Brown v. Goodwin*, 75 N. Y., 409.

The questions involved in this case are so carefully considered in *Fox v. Stafford, supra*, that it would seem needless to prolong this discussion of them. A bare reference to that case is sufficient to justify us in holding that the defendant failed to acquire any title under the collector's deed. After a full review of the provisions of the statute and the authorities, the Court, in *Brown v. Goodwin, supra*, upon a substantially similar state of facts as we have in this case, and as appeared in *Fox v. Stafford, supra*, reached the same conclusion as did the Court in the latter case.

Questions were raised as to whether the deed of the collector was properly sealed, though it appears to have been (*Harrell v. Butler*, 92 N. C., 20), and as to whether Collector Harkins, as successor to Collector Rogers, could make the deed to Pergusson, under The Code, sec. 1267, when read and construed in connection with the Revised Statutes of the United States, sec. 3198, requiring the deed of the collector to be executed "in accordance with the laws of the State in which the real property is situate, upon the subject of the sale of such property under execution." *Avery v. Rose, supra;* Devlin on Deeds, secs. 1411, 1412. If our statute does not apply or is not to be followed, there appears to be some conflict in the authorities as to whether the deed should be executed by the officer who made the sale, though his term has expired, or by his successor. Black on Tax Titles, sec. 754; Blackwell on Tax Titles, sec. 390; Murfree on Sheriffs, sec. 1042; Devlin on Deeds, *supra*. But it is not necessary that we should decide these interesting questions, and we leave them open for future consideration if they should arise again,

as we have reached a conclusion which disposes of the appeal upon other matters presented in the case.

There is no error in the charge of the Court to the jury, nor in the rulings during the course of the trial.

No error.

CLARK, C. J., *dissenting.* The sole question at issue is the validity of the deed executed by the collector of United States revenue to the defendant. It is stated in the opinion that "the recitals in the deed are sufficient in their scope to show that the assessment of the taxes had been duly made and that the necessary steps had been taken to subject the land to their satisfaction, upon failure of the owner to pay." These were the only respects as to which defects were alleged, and *Avery v. Rose,* 15 N. C., 549; *Fox v. Stafford,* 90 N. C., 298, and other cases are cited as authority that such facts must be proved *aliunde* the recitals in the deed. Such formerly was the law, but long experience having demonstrated that under such ruling no tax title had ever been sustained in this State, our State, in 1887, ch. 137, made a radical change, "which, under the pressure of the same necessity has been enacted in other States," *King v. Cooper, infra,* and made a tax deed *prima facie* evidence of the matters therein recited (and conclusive evidence as to some matter) and threw the burden to negative such recitals upon the tax delinquent. This act was passed after careful deliberation by the Legislature of 1885, which created a commission to report an act to that effect, and by the Legislature of 1887, which, with some amendments, adopted the report of the commission. That act has been sustained in *Peebles v. Taylor,* 118 N. C., 165; *Sanders v. Earp, Ibid.,* 275; *Moore v. Byrd, Ibid.,* 688; *Powell v. Sikes,* 119 N. C., 231; *Lyman v. Hunter,* 123 N. C., 508; *King v. Cooper,* 128 N. C., 347, and in several other cases.

The United States found it necessary and proper to pass a

similar act, and section 3199, U. S. Rev. Stat., reads as follows: "The deed of sale given in pursuance of the preceding clause shall be *prima facie* evidence of the facts therein stated." This plainly has reference to the recitals in the deed, like all other similar statutes, and not to the recitals in some preceding certificate. As it is held in the opinion herein that such "recitals in the deed are sufficient in their scope to show that the assessment of the taxes had been duly made, and that the necessary steps had been taken to subject the land to their satisfaction upon failure of the owner to pay," and there is no evidence to contradict this, and no allegation of any defect in any other particular, it follows that in the further language of said section 3199, U. S. Rev. Stats., the deed must "operate as a conveyance of all the right, title and interest the party had in and to the real estate thus sold."

The validity of this U. S. statute in thus changing the rule by making the recitals in the deed *prima facie* and placing the burden to show irregularities upon the tax defaulter, has never been called in question. But the United States Supreme Court has repeatedly affirmed the constitutionality of similar State statutes, which decisions and those of the State courts, all to the same effect, may be found collected in 2 Cooley Taxation (3 Ed.), 1007, note 3, and 1008 and 1009, and very numerous cases in the notes thereto. The effect of these statutes is thus summed up (p. 1007):

"If the tax deed is made *prima facie* evidence of the regularity of all proceedings and of title in the purchaser, this effects an entire change in the burden of proof, releasing the purchaser thereof, and casting it upon the party who would contest the sale. The purchaser is no longer under the necessity of showing the correctness of the proceedings, but the contestant must point out in what particular he claims them to be incorrect."

The power to enact, and this effect of, the statute (U. S.

Rev. Stats., 3199), is sustained by three pages of citations, among them many from the United States Supreme Court, each of which supports the validity of this plaintiff's deed. With the great increase in the subjects under government requiring expenditures and the greater increase everywhere in the rate of taxation, such acts become imperatively necessary. The evasion of any property from payment of its due share of taxation increases the rate levied upon those who pay. Collection can only be enforced by sale, or the fear thereof. There can be no sales without purchasers, and no 'purchasers unless they can get good titles. Those who pay their taxes honestly should be protected by the government from also being assessed to pay the taxes of those who default. Under the old system this was well nigh impossible, for (as already stated) no tax title was ever sustained by the Supreme Court of this State till since the passage of the act of 1887, above cited. The Federal statute (sec. 3199) is of the same tenor as our act of 1887, and was enacted for the same reason. We should give it the same construction and enforcement we have given our own statute.